The New York Times
WASHINGTON BUREAU
1627 I STREET, N.W.
WASHINGTON, D.C. 20006
(202) 862-0300

December 16, 2016

Hon. Richard J. Leon
U.S. District Court
333 Constitutional Ave., N.W.
Washington, DC 20001

Dear Judge Leon:

I write concerning the upcoming sentencing of Gen. James E. Cartwright (Ret.). In the Statement of Offense in his case, Gen. Cartwright acknowledges that he spoke to me while I was completing the writing of my book "Confront and Conceal" and the excerpts from it that appeared in *The New York Times*. He also acknowledges that some classified information was discussed.

But that tells only part of the story. I want to provide a fuller context for my interview with Gen. Cartwright, which is more complex than it may at first appear. My reporting in the book and *The Times* was intended to help the public better understand how the United States government, in cooperation with Israel and European allies, was responding to the threat of nuclear-armed Iran. The fact that Iran's nuclear faciltities had been attacked by a powerful cyberweapon was no secret by the time I began work on the book. The source code for that attack, later called Stuxnet, leaked out in the summer of 2010 because of an error or accident by the authors of the code. At that point, the code and its obvious target were publicly available and the existence of the cyberweapon was widely reported on, by me and many others. My research was focused on telling the story of how this powerful cyberweapon was developed and how it spread around the world, and the important decisions and policy implications surrounding its creation.

I had spoken to many sources in the United States, Israel, Europe, and elsewhere prior to speaking to Gen. Cartwright, and I already had a detailed understanding of the chain of events. I was nearing the end of my research and had written much of the book when I approached the White House for final interviews. There, I was advised to reach out to Gen. Cartwright for an interview. I contacted the General, and he agreed to meet with me, while making it clear he had sharp limits on what he could discuss.

During the course of our conversation I described the findings of 14 months of reporting. He expressed concern that certain classified information not be revealed. His cautions weighed heavily in decisions that I made, in consultation with editors, about what information to withhold from publication.

My interview with Gen. Cartwright was not extraordinary. In response to a FOIA request submitted by a reporter, the CIA recently released documents about my contacts with the agency while doing my reporting. The documents show that at the same time I was arranging the Cartwright interview the White House had authorized the deputy director of the CIA to meet with me and discuss my findings and the possible risks of disclosure. This is a standard, if little-understood, practice in the course of reporting on sensitive national security affairs. Such conversations are crucial so that news organizations like *The Times can* responsibly fulfill their First Amendment obligations. The irresponsible thing would be not to hear out the government about potential harm.

Gen. Cartwright understood the importance of that give-and-take. Throughout the interview, he consistently showed his concern that information damaging to U.S. interests not be made public. Far from harming U.S. interests, his interview contributed to my efforts to provide the public with a comprehensive account of a critical new element of the American use of force, while trying to avoid harming future operations. I have no doubt he was trying to act in the best interests of the United States.

Sincerely,

David E. Sanger
National Security Correspondent
The New York Times